Date signed March 20, 2007



IN THE UNITED STATES BANKRUPTCY COURT
DISTRICT OF MARYLAND
at GREENBELT

| | | | |
|---|---|---|---|
| **In Re:** | * | | |
| **Marnitta L. King,** | * | **Case No.** | **06-15660-TJC** |
| | * | **Chapter** | **13** |
| **Debtor.** | * | | |
| ***************************************** | * | | |
| **Marnitta L. King,** | * | | |
| | * | | |
| | * | | |
| **Movant,** | * | | |
| vs. | * | | |
| **Wells Fargo Bank, N.A.,** | * | | |
| | * | | |
| | * | | |
| **Respondent.** | * | | |

**MEMORANDUM OF DECISION IN SUPPORT OF ORDER VOIDING
FORECLOSURE SALE**

Before the Court is the Motion to Set Aside Sell [sic] (the "Motion") filed by

Marnitta L. King (the "Debtor") on January 22, 2007. Docket No. 50. Wells Fargo

Bank, N.A. (the "Respondent") filed a Response to Motion to Set Aside Sale on February

6, 2007. Docket No. 52. In the Motion, the Debtor asks the Court to avoid a post-

1

petition foreclosure sale of the Debtor's residence as violating the codebtor stay of Section 1301 of the Bankruptcy Code.[1]  Because the Debtor had two prior bankruptcy cases dismissed during the one-year period preceding the petition date, the automatic stay of Section 362 did not arise upon the filing of the petition by operation of Section 362(c)(4)(A)(i).  For the reasons stated herein, the Court concludes that the codebtor stay of Section 1301 barred the Respondent from proceeding with a post-petition foreclosure sale of the Debtor's residence, even though the automatic stay of Section 362 did not arise as a result of Section 362(c)(4)(A)(i).   Accordingly, the Court will grant the Motion.

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334, 157(a), and Local Rule 402 of the United States District Court for the District of Maryland.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  The following constitutes the Court's findings of fact and conclusions of law.

## I.     FINDINGS OF FACT

The operative facts are not in dispute.  The Debtor is the owner of real property and improvements at 5015 Cumberland Street, Capitol Heights, Maryland 20743 (the "Property").  The Debtor is a joint owner of the Property with Timothy Savoy (the "Codebtor").  The Respondent is a secured creditor of the Debtor by virtue of a promissory note dated December 27, 2004, repayment of which is secured by a deed of trust that is recorded among the land records of Prince George's County, Maryland.  There is no dispute that the note and deed of trust were executed by both the Debtor and the Codebtor.

---

[1] Unless otherwise noted, all statutory citations shall be to the Bankruptcy Code, 11 U.S.C. § 101 et seq., as currently in effect.

The Debtor has filed three cases for relief under Chapter 13 of the Bankruptcy Code.  The Debtor filed her first case on June 8, 2006.  Case No. 06-13322.  The Debtor was represented by counsel in that case.  The case was dismissed on June 16, 2006, for lack of eligibility pursuant to Section 109(h)(1).[2]  Specifically, the Debtor did not receive credit counseling from an approved budget and counseling agency prior to filing the petition, as required by Section 109(h).  The docket reflects that the Debtor obtained counseling and received a counseling certificate, but the certificate establishes that the Debtor obtained the counseling post-petition, rather than pre-petition as required by Section 109(h)(1).  See Docket Nos. 20 and 23 in Case No. 06-13322.

The Debtor filed her second case on July 21, 2006.  Case No. 06-14276.  Again the Debtor was represented by counsel.  This second case was dismissed four days later on July 25, 2006, pursuant to Local Bankruptcy Rule 1002-1.  The case was dismissed because Debtor's counsel was unable to pay the case filing fee, allegedly because of difficulties with the electronic credit card functions, and Debtor's counsel failed to file a master mailing matrix with the petition.  See Docket No. 7 in Case No. 06-14276.  There is nothing in the record in this case or the two prior cases to suggest that the two prior cases were dismissed as a result of the failure by the Debtor to take any informed action

---

[2] Section 109(h)(1) provides:

> (h)(1) Subject to paragraphs (2) and (3), and notwithstanding any other provision of this section, an individual may not be a debtor under this title unless such individual has, during the 180-day period preceding the date of filing of the petition by such individual, received from an approved nonprofit budget and credit counseling agency described in section 111(a) an individual or group briefing (including a briefing conducted by telephone or on the Internet) that outlined the opportunities for available credit counseling and assisted such individual in performing a related budget analysis.

11 U.S.C. § 109(h)(1).

3

or because the Debtor would not have been able to successfully complete her bankruptcy case.

The Debtor filed the instant case early in the morning of September 15, 2006. The Debtor did so intending to stop a foreclosure sale of the Property that Respondent had scheduled for later that day. The Debtor filed this case on her own behalf and asserts that she filed the case without the assistance of bankruptcy counsel because of the lack of success she had in her two prior cases where she was represented.[3]

Immediately after filing the petition, the Debtor notified the Respondent that she had filed the instant bankruptcy case. The Respondent faxed the Debtor a letter stating that it would not stop the foreclosure sale because no automatic stay went into effect upon the filing of the case by virtue of Section 362(c)(4)(A)(i). A foreclosure sale was held at approximately 1:00 p.m. on September 15, 2006, at which the Respondent was the successful bidder.

## II.    PROCEDURAL BACKGROUND

After receiving notice by the Respondent that it would not stop the foreclosure sale because of Section 362(c)(4)(A)(i), the Debtor filed a motion seeking the imposition of the automatic stay on an emergency basis. The emergency motion was filed just minutes before the foreclosure sale and not in sufficient time for any action to be taken on it prior to the sale. The Court held a hearing on the motion approximately two hours after the foreclosure sale had been held. The Debtor personally attended the hearing and counsel for the Respondent participated by telephone.

At the conclusion of the hearing, the Court granted the emergency motion and imposed the automatic stay pursuant to Section 362(c)(4)(B) on a prospective basis only.

---

[3] Although the Debtor is a licensed attorney, she does not practice bankruptcy law.

Both parties, however, recognized the well established law that, where a foreclosure sale occurs prior to the filing of a petition (and by analogy, prior to the imposition of a stay under Section 362(c)(4)(A)), a debtor essentially loses all rights held as a mortgagor of property that can be reorganized in a subsequent bankruptcy case.  See e.g., In re Denny, 242 B.R. 593 (Bankr. D. Md. 1999).  In an attempt to revive her substantive interest in the Property, the Debtor argued at the hearing that the automatic stay should be imposed retroactively so as to void the foreclosure sale.  The Debtor asserted a number of theories to support that contention, all of which the Respondent disputed.

Due to the expedited nature of the hearing, and the lack of notice to the Respondent of the Debtor's argument, the Court required the Debtor and the Respondent to brief the issue of whether the automatic stay could or should be imposed retroactively in this case.  At no time did either party address the codebtor stay of Section 1301.

On September 25, 2006, the Debtor filed a brief in support of her position that the automatic stay should be imposed retroactively to void the foreclosure sale.  The Respondent filed an opposition brief on October 5, 2006.  The Court subsequently held a hearing on the retroactive issue and took the matter under advisement.

In the meantime, the Debtor filed her schedules in this case.  The schedules revealed that the Codebtor existed on Respondent's loan and deed of trust.  On December 20, 2006, the Court held a status conference and asked the parties to file supplemental briefs addressing the applicability of the codebtor stay imposed by Section 1301(a).  Thereafter, on January 22, 2007, the Debtor filed the instant Motion.  In the Motion the Debtor requests that the Court set aside the foreclosure sale because it was conducted in

5

violation of the codebtor stay of Section 1301.  On February 6, 2007, the Respondent filed the Response.

For the reasons set forth herein, the Court finds and concludes that the foreclosure sale violated the codebtor stay of Section 1301.  As a result, the foreclosure sale is void.  Further, because the Court is voiding the foreclosure sale, the Court need not resolve the Debtor's contention that the automatic stay of Section 362 should be applied retroactively in this case.

### III.   CONCLUSIONS OF LAW

As mentioned in the introduction, the issue in this case is whether the codebtor stay of Section 1301 barred the Respondent from proceeding with a post-petition foreclosure sale of the Property even though the automatic stay of Section 362 did not arise as a result of Section 362(c)(4)(A)(i).  Specifically, then, the issue is whether Section 362(c)(4)(A)(i), or any other Bankruptcy Code provision, limits the applicability of the codebtor stay under Section 1301 in cases where the circumstances of Section 362(c)(4)(A)(i) are met.

In a case filed under Chapter 13, a stay comes into effect for a codebtor under Section 1301(a).  That section provides:

> (a) Except as provided in subsections (b) and (c) of this section, after the order for relief under this chapter, a creditor may not act, or commence or continue any civil action, to collect all or any part of a consumer debt of the debtor from any individual that is liable on such debt with the debtor, or that secured such debt, unless—
>    (1) such individual became liable on or secured such debt in the ordinary course of such individual's business; or
>    (2) the case is closed, dismissed, or converted to a case under chapter 7 or 11 of this title.

11 U.S.C. § 1301(a). "By enacting Section 1301 Congress intended to simultaneously preserve the substantive rights of creditors and to preserve the fresh start of the debtors by preventing indirect collection practices." In re Cooper, 116 B.R. 469, 472 (Bankr. E.D. Va. 1990) (citing H.R. Rep. No. 595, 95th Cong., 1st Sess. 122, reprinted in 1977 U.S. Code Cong. & Admin. News 6082).

Section 1301 applies by its terms to codebtors -- individuals that are liable on certain debts with the debtor or that secured such debts. Further, Section 1301 applies only to "consumer debts." Section 101(8), in turn, defines a consumer debt as a "debt incurred by an individual primarily for a personal, family, or household purpose." A debt securing a debtor's principal residence qualifies as a consumer debt. Matter of Booth, 858 F.2d 1051, 1054-55 (5th Cir. 1988) (finding that debt secured by real property may be considered consumer debt for purposes of evaluating dismissal under Section 707(b)); Zolg v. Kelly (In re Kelly), 841 F.2d 908, 912-913 (9th Cir. 1988) (same); In re Johnson, 115 B.R. 159, 162 (Bankr. S.D. Ill. 1990) (same). See also, In re Zersen, 189 B.R. 732, 740 n4. (Bankr. W.D. Wis. 1995) (finding that a loan incurred by a debtor to purchase a family home is a consumer debt for purposes of Section 1301); Harris v. Margaretten & Co. (In re Harris), 203 B.R. 46, 50 (Bankr. E.D. Va. 1994) (same); In re Gunderson, 76 B.R. 167, 169 (Bankr. D. Ore. 1987) (same). See also, Guaranty Sav. & Loan Ass'n v. Lowe (In re Lowe), 109 B.R. 698 (W.D. Va. 1990) (finding that a debt secured by the debtor's family home constitutes a consumer debt for purposes of Section 523(d)).

In this case, there is no real dispute that the Codebtor is an individual to whom Section 1301 applies or that Respondent's loan is a "consumer debt" under Section 1301. Further, there is no dispute that the Codebtor did not become "liable on or secure [the]

7

debt in the ordinary course of the [Codebtor's] business." 11 U.S.C. § 1301(a)(1). Accordingly, the codebtor stay of Section 1301 applies in this case unless its application is limited by Section 362(c)(4)(A)(i) or some other provision of the Bankruptcy Code. Respondent points to no such provision other than Section 362(c)(4)(A)(i).

Section 362(c)(4)(A)(i) is an exception to the automatic stay that arises pursuant to Section 362(a). Section 362(a) provides that, with some exceptions, "a petition filed under section 301, 302, or 303 of this title . . . operates as a stay, applicable against all entities," of the actions set forth in Section 362(a)(1)(8). "A chief purpose of the automatic stay is to allow for a systematic, equitable liquidation proceeding by avoiding a chaotic and uncontrolled scramble for the debtor's assets in a variety of uncoordinated proceedings in different courts." Safety-Kleen, Inc. v. Wyche, 274 F.3d 846, 864 (4th Cir. 2001) (internal quotations omitted).

Recent amendments to the Bankruptcy Code have a direct effect on the applicability of the automatic stay in certain cases. On April 20, 2005, Congress enacted the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA) Pub. L. No. 109-8, 119 Stat. 23, which took effect on October 17, 2005. Consistent with its name, BAPCPA added a number of provisions to the Bankruptcy Code that purportedly were intended to curb perceived abuses of the bankruptcy process. One such provision is Section 362(c)(4). In particular, Section 362(c)(4)(A)(i) provides:

> [I]f a single or joint case is filed by or against a debtor who is an individual under this title, and if 2 or more single or joint cases of the debtor were pending within the previous year but were dismissed, other than a case refiled under section 707(b), the stay under subsection (a) shall not go into effect upon the filing of the later case.

8

11 U.S.C. § 362(c)(4)(A)(i).  The Debtor does not dispute that because she had two previous cases dismissed in the year prior to filing the petition in this case, Section 362(c)(4)(A)(i) applies.[4]  As stated above, Respondent contends that the effect of Section 362(c)(4)(A)(i) is that it prevented both the automatic stay of Section 362(a) and the codebtor stay of Section 1301 from going into effect in this case. [5]

The starting point for determining whether Section 362(c)(4(A)(i) limits the applicability of the codebtor stay is the statute itself.  Generally, "unless there is some ambiguity in the language of a statute, a court's analysis must end with the statute's plain language."  Hillman v. IRS, 263 F.3d 338, 342 (4th Cir. 2001) (citing, Caminetti v. United States, 242 U.S. 470, 485 (1917) ("The rules which are to aid doubtful meanings need no discussion" when the statutory language is clear and unambiguous.)); see also, Sigmon Coal Co. v. Apfel, 226 F.3d 291, 305 (4th Cir. 2000) ("when the terms of a statute are clear and unambiguous, our inquiry ends and we should stick to our duty of enforcing the terms of the statute as Congress has drafted it"); United States v. Morison, 844 F.2d 1057, 1064 (4th Cir. 1988) ("when the terms of a statute are clear, its language is conclusive and courts are not free to replace that clear language with an unenacted

---

[4] The inhibition of the automatic stay under Section 362(c)(4)(A)(i) is not absolute.  Pursuant to Section 362(c)(4)(B), the Court may order the stay to take effect "only if the party in interest demonstrates that the filing of the later case is in good faith as to the creditors to be stayed."  11 U.S.C. § 362(c)(4)(B).  At the hearing on September 15, 2006, the Court found and concluded that the Debtor filed the instant case in good faith, as required by Section 362(c)(4)(B).  As stated above, however, the Court imposed the stay on a prospective basis only.  See Section 362(c)(4)(C) ("a stay imposed under subparagraph (B) shall be effective on the date of entry....")  Therefore the imposition of the stay at the September 15, 2006 hearing did not render void the foreclosure sale that had occurred earlier that day, which ordinarily would be fatal to the Debtor's effort to maintain the Property through a bankruptcy plan.  See supra at Section II.

[5] The Respondent points out that the codebtor stay under Section 1301 arises "after the entry of the order for relief." 11 U.S.C. § 1301(a).  Respondent contends that the foreclosure sale took place prior to the entry of the order for relief.  The Court disagrees.  Under Section 301(b), "the commencement of a voluntary case under a chapter of this title constitutes an order for relief under such chapter."  Nothing in Section 362(c)(4) prevents the order for relief from arising upon the filing of the bankruptcy petition even if Section 362(c)(4)(A) applies in a case.

9

legislative intent" (internal quotation marks and alteration marks omitted)).  "The intent of Congress as a whole is more apparent from the words of the statute itself than from a patchwork record of statements inserted by individual legislators and proposals that may never have been adopted by a committee, much less an entire legislative body -- a truth which gives rise to 'the strong presumption that Congress expresses its intent through the language it chooses.'"  <u>Apfel</u>, 226 F.3d at 304-305 (quoting <u>INS v. Cardoza-Fonseca</u>, 480 U.S. 421, 432 n.12, (1987)).

With respect to the issue presented herein, Sections 362(c)(4)(A)(i) and 1301(a) are clear and unambiguous.  Neither Section 1301 nor Section 362(c)(4)(A) contains any language that limits the applicability of the codebtor stay in cases where Section 362(c)(4) is applicable.

Section 362(c)(4)(A)(i) expressly provides that, in certain circumstances, "the <u>stay under subsection (a)</u> shall not go into effect upon the filing" of the bankruptcy case.  11 U.S.C. § 362(c)(4) (emphasis added).  By its own express and unambiguous terms, Section 362(c)(4)(A) prevents only the stay of Section 362(a) from going into effect when the factual predicate enumerated in Section 362(c)(4) exists.  Section 362(c)(4)(A)(i) does not address the applicability of the codebtor stay that arises under Section 1301(a), and it certainly does not provide that the codebtor stay of Section 1301 does not come into effect if the circumstances of Section 362(c)(4) are met.

Section 1301(a), on the other hand, sets forth the specific factual instances when the codebtor stay applies. As stated above, there is no dispute that the factual predicates for the application of Section 1301(a) exist in this case.  Nowhere in Section 1301(a) is the codebtor stay limited, qualified, or effected by Section 362(c)(4).

While Section 362(c)(4)(A)(i) is unambiguous on its face and no inquiry into congressional intent is required, a review of another BAPCPA amendment to the Bankruptcy Code establishes that Congress was well apprised of the distinction between the automatic stay of Section 362 and the codebtor stay of Section 1301.  Section 365(p)(3) was added to the Bankruptcy Code by BAPCPA.  Section 365(p)(3) provides:

> In a case under chapter 11 in which the debtor is an individual and in a case under chapter 13, if the debtor is the lessee with respect to personal property and the lease is not assumed in the plan confirmed by the court, the lease is deemed rejected as of the conclusion of the hearing on confirmation. <u>If the lease is rejected, the stay under section 362 and any stay under section 1301 is automatically terminated with respect to the property subject to the lease</u>.

11 U.S.C. § 365(p)(3) (emphasis added).  The specific reference in Section 365(p)(3) to the termination of both the automatic stay of Section 362 and the codebtor stay of Section 1301 further supports what the plain language of the two sections proves:  Congress understood that the two stays are separate and distinct.  Congress easily could have included language in Section 362(c)(4) that limited the applicability of the codebtor stay when the circumstances of Section 362(c)(4)(A)(i) are met - just as it did in Section 365(p)(3) - but it did not do so.

The Respondent argues that the codebtor stay was never intended as a "second bite at the apple" for the Debtor.  Consequently, the Respondent advances the position that the vitality of the codebtor stay is at the mercy of the status of the automatic stay.  In support of this contention the Respondent points to legislative history of Section 1301(a), citing H.R. 8200, 95th Cong., 1st Sess. (1977) p. 426 which states:

> [The codebtor stay] is designed to protect a debtor
> operating under a Chapter 13 individual repayment plan

>case by insulating him from indirect pressures from his creditors exerted through friends or relatives that may have co-signed an obligation of the debtor.

As noted earlier, however, Sections 362(c)(4)(A)(i) and 1301(a) are clear on their face. Therefore, no inquiry into congressional intent is necessary or appropriate. Hillman v. IRS, 263 F.3d at 342 ("unless there is some ambiguity in the language of a statute, a court's analysis must end with the statute's plain language").

Additionally, Collier On Bankruptcy lends further support to the contention that the codebtor stay applies where the automatic stay is limited by Section 362(c)(4)(A)(i) or other BAPCPA provisions:

>The importance of the codebtor stay was increased by the 2005 amendments to the Bankruptcy Code. A variety of exceptions were added to the automatic stay of section 362(a) that diminished the scope of that stay and, in some cases, completely eliminated it. None of these new exceptions affect the codebtor stay of section 1301, except for that created by section 365(p)(3), the only new provision to mention it. Thus, even in cases when the automatic stay does not apply, if property is owned by a chapter 13 debtor and a codebtor who is not in bankruptcy, the fact that the automatic stay does not permit a creditor from pursuing the property will be immaterial if the codebtor stay still protects the nondebtor co-owner.

Collier on Bankruptcy, 1301.01 (15th ed., rev. 2006).

Case law prior to the enactment of BAPCPA routinely recognized that the codebtor stay of Section 1301 and the automatic stay of Section 362 arise from independent provisions, and the termination or absence of one does not automatically terminate the other. See e.g., Harris, 203 B.R. at 50 (holding that a post-petition foreclosure sale was void in violation of the codebtor stay even though the Court previously granted relief from the automatic stay under Section 362); In re Jones, 106

B.R. 33 (Bankr. W.D.N.Y. 1989) (finding that the creditor did not violate the automatic stay but did violate the codebtor stay when it repossessed the vehicle); In re Cooper, 116 B.R. at 472 (granting relief from the codebtor stay on reconsideration after denying motion for relief from the codebtor stay even when the automatic stay had previously been lifted).

Moreover, after the enactment of BAPCPA, a decision in this District recognized the independence of the codebtor stay from the automatic stay, although in a different context. In re Muhaimin, 343 B.R. 159, 165 (Bankr. D. Md. 2006) (stating that the codebtor stay is a "statutory creature springing from [the debtor's] bankruptcy, it applied by operation of law to [the codebtor] in this case notwithstanding termination of the automatic stay under Section 362(a) [in the codebtor's own pending bankruptcy case]").

Based on the foregoing, the Court concludes that Respondent's foreclosure sale violated the codebtor stay of Section 1301. Having determined that the foreclosure sale violated the codebtor stay, the Court must determine what relief should be granted. It is well established in this District that a foreclosure sale conducted in violation of the automatic stay of Section 362 is void. In re Brown, 342 B.R. 248, 255 (Bankr. D. Md. 2006); In re Lampkin, 116 B.R. 450, 453 (Bankr. D. Md. 1990). Similarly, courts have held that acts done in violation of the codebtor stay also are void. See Harris, 203 BR at 50; see also, Hope v. United Cos. Funding, Inc. (In re Holder), 260 B.R. 571, 577 (Bankr. M.D. Ga. 2001) (following Harris and stating "this same general rule [violations of the automatic stay are void] should apply to codebtor stay violations under Section 1301 as well"). Based on these authorities, the Court concludes that the foreclosure sale violated the codebtor stay and is void.

Finally, in the Respondent's opposition to the Motion, the Respondent requests that the Court annul the codebtor stay in order to validate the foreclosure sale. In support of this contention the Respondent relies on In re Allen, 300 B.R. 105, 122 (Bankr. D.D.C. 2003. In Allen, Charles Allen owned certain real property subject to a lien of Wells Fargo. He filed a case under Chapter 13 of the Bankruptcy Code that was dismissed with prejudice pursuant to Section 109(g). Thereafter, Wells Fargo initiated foreclosure proceedings for the sale of the property. Subsequently, six days prior to the scheduled foreclosure, Mr. Allen conveyed the property to himself and his mother and filed a petition under Chapter 13 on his mother's behalf in an attempt to stop the foreclosure sale. Unaware of either the conveyance of the property or the commencement of the bankruptcy case by the mother, Wells Fargo went ahead with the post-petition foreclosure sale without obtaining relief from the automatic stay (as applicable to the mother) or the codebtor stay (as applicable to Mr. Allen.) In annulling the automatic stay and codebtor stay, the Court found, among other things, that "the relief granted here is based on abuse of the bankruptcy system." Allen, 300 B.R. at 122.

Annulment of the codebtor stay is appropriate only in exceptional and limited circumstances. See e.g. Holder, 260 B.R. at 577; Harris, 203 B.R. at 50. In the instant case, Respondent's factual allegations do not warrant annulment of the stay based on the rationale of Allen. The dismissals of Debtor's two prior bankruptcy cases were due to filing deficiencies, at least some of which were attributable to her counsel. See supra at p. 2-4. While filing deficiencies are not to be minimized, they hardly rise to the level of the abuse found in Allen. Further, for purposes of this ruling only, the Court takes

14

judicial notice[6] that the Debtor's Schedule A, filed under penalty of perjury, reflects the Debtor believes that the Property is worth $200,000 and the Respondent's debt is $155,000, leaving a potential equity cushion of $45,000 to adequately protect the Respondent's lien position.  Finally, unlike in Allen, the Respondent in this case had actual knowledge of the commencement of the case prior to the foreclosure sale.  Accordingly, the Respondent has not articulated a compelling basis to annul the codebtor stay.

Nonetheless, this ruling is without prejudice to the Respondent filing a motion seeking relief from the automatic stay and the codebtor stay.  Any issues of whether the Respondent should be allowed to go forward with a new foreclosure sale are best left to a motion for relief from the automatic stay and the co-debtor stay, where both parties will have a full opportunity to address the merits of such relief.  If Respondent contends that the Debtor's actions support such relief, the Respondent will be free to make such claims in an appropriate motion.

## IV.    CONCLUSION

For the foregoing reasons the Court finds that Respondent's foreclosure sale was in violation of the codebtor stay and is void.  This ruling is without prejudice to the Respondent's right to file a motion for relief from stay.  The Court would note, however, that because the foreclosure sale is void, and the automatic stay is currently in place pursuant to this Court's order on September 15, 2006, any motion to lift the stay must be brought pursuant to Sections 362(d) and 1301(c).

---

[6] See United States v. Ruby (In re Grannan), 277 B.R. 673, 675 (Bankr. E.D. Va. 2002) (taking judicial notice of the debtor's schedules in finding disputes of material fact when denying summary judgment).

15

Case 06-15660    Doc 72    Filed 03/20/07    Page 16 of 16